*1196 HARTZ, Circuit Judge,
concurring in the Judgment only and delivering an Opinion.
I concur with Judge Baldock in reversing the judgment of the district court and remanding with instructions to dismiss Taxpayers’ refund suit for want of subject matter jurisdiction. I respectfully disagree, however, with respect to the grounds for reversal.
Both Judge Baldock and Judge Seymour believe that the common-law mailbox rule survives the enactment of I.R.C. § 7502. They apparently read that statute as merely providing a safe harbor for proving timely delivery of a tax document or payment — the taxpayer is home free if the taxpayer has a receipt for registered or certified mail, but the taxpayer may still be able to prove timely delivery by other evidence. I do not share that belief.
If § 7502(c) had only paragraph “(1)”— which states that proper registration of an item of mail is prima facie proof of timely delivery — I might agree with the interpretation of § 7502 shared by the other members of this panel. But it is too difficult to square § 7502(c)(2) with their interpretation. In 1958, § 7502(c) was amended by adding to the registered-mail provision, the following language:
(2) Certified mail. — The Secretary [of the Treasury] is authorized to provide by regulations the extent to which the provisions of paragraph (1) of this subsection with respect to prima facie evidence of delivery and the postmark date shall apply to certified mail.
If the common-law mailbox rule survived enactment of § 7502, this new paragraph is problematic in two ways. First, why did Congress bother to enact a provision enabling the Secretary to issue a certified-mail regulation? Under I.R.C. § 7805(a) the Secretary has general authority to “prescribe all needful rules and regulations for the enforcement of [the I.R.C.].” This authority is frequently and forcefully exercised. An interpretative regulation under § 7805 could have set forth how the common-law mailbox rule applies to certified mail. I recognize that under current law an explicitly authorized regulation may be entitled to greater deference in the courts than a regulation authorized only by § 7805. See generally Gregg D. Polsky, Can Treasury Overrule the Supreme Court?, 84 B.U. L.Rev. 185, 210-11 (2004). I do not, however, believe that such a subtlety could have motivated the 1958 Congress.
Second, if the common-law mailbox rule survived § 7502, why did Congress limit the Secretary’s regulatory authority to promulgating regulations solely with respect to certified mail? Why not also give the Secretary explicit authority to issue regulations concerning when evidence regarding regular mail constitutes prima fa-cie proof of timely delivery? There may be clever answers to my (intended-to-be) rhetorical questions concerning § 7502(c)(2); but I suspect they would smell of the lamp.
Judge Baldock’s analysis of the matter invokes the “ ‘well-established principle of statutory construction that the common law ought not to be deemed to be repealed, unless the language of the statute be clear and specific for this purpose.’ ” Op. at 13-14 (quoting Norfolk Redevelopment & Housing Auth. v. Chesapeake & Potomac Tel. Co., 464 U.S. 30, 35, 104 S.Ct. 304, 78 L.Ed.2d 29 (1983)). This canon of construction, however, can eviscerate the will of Congress if not confined to its proper sphere. It is, at most, an aid in interpret *1197 ing statutory language.. There is no public policy against changing the common law. The canon should not be used (misused), as it has been in the past, as a tool of courts hostile to legislative innovation. See generally Roscoe Pound, Common Law and Legislation, 6 Harv. L.Rev. 383 (1908). As Dean Pound wrote almost a century ago:
The proposition that statutes in derogation of the common law are to be construed strictly ... assumes that legislation is something to be deprecated. As no statute of any consequence dealing with any relation of private law can be anything but in derogation of the common law, the social reformer and the legal reformer, under this doctrine, must always face the situation that the legislative act which represents the fruit of their labors will find no sympathy in those who apply it, will be construed strictly, and will be made to interfere with the status quo as little as possible.... Some regard this attitude toward legislation as a basic principle of jurisprudence. Others are content to make of it an ancient and fundamental principle of the common law. In either event they agree in praising it as a wise and useful institution. It is not difficult to show, however, that it is not necessary to and inherent in a legal system; that it is not an ancient and fundamental doctrine of the common law; that it hád its origin in archaic notions of interpretation generally, now obsolete, and survived in its present form because of judicial jealousy of the reform movement; and that it is wholly inapplicable to and out of place in American law of today.
Id. at 387-88 (footnotes omitted).
Of course, statutes may employ terms of art that have a meaning provided by the common law, and one can ordinarily assume that the statutory meaning does not depart from the common-law meaning. Also, the common law is an' essential component of the fabric of the law, providing background assumptions ■ against which statutory language should be read. But we should not impose a “clear-statement” rule requiring that statutory language explicitly negate every common-law proposition on the subject. We must not forget that our task is to construe the statutory language, not to establish an obstacle course for those who draft the laws. The persuasiveness of Norfolk Redevelopment, for example, rests on the point that the statute at issue took the pertinént language from a previous statute that clearly preserved the common-law rule.
In the case before us, the statutory language compels the inference that § 7502 was intended to occupy the field, providing the sole means by which timely delivery can be proved. Because Taxpayers’ proof does not meet the statutory requirements, their refund claim must be treated as untimely.